Morse, J.
This action was brought upon a contract of guaranty. Woodcock, a retail druggist and market gardener in Mobile, wrote to the plaintiffs’ firm, druggists in New-York, an order for certain specified goods, to be sent to him at Mobile, consisting of drugs, medicines and garden seeds. In his letter, ordering the goods, Woodcock stated that he wanted the seeds for himself and for a Mrs. Barnes of Mobile. His letter contemplated that the plaintiffs’ firm, not being themselves seedsmen, would procure the seeds for him and on his own credit, of Smith of Broadway, seedsman, or of some other respectable house in that line. The plaintiffs’ firm procured the seeds of Smith, not on the credit of Woodcock, whom Smith refused to trust, but on their own credit, and at four months.
In speaking of the credit to be obtained on the seeds, Woodcock in his letter said he wished the seeds “ at four to six months time if possible,” for himself, and that Mrs. Barnes would pay her bill in thirty days from the arrival of the seeds. He said nothing in his order as to the credit expected upon the drugs and medicines, but left that to the usage of the firm, with which (as a member of a firm then dissolved) he had dealt before. The usage of the plaintiffs’ firm to give a credit of six months was uniform, and was, no doubt, known to Woodcock.
*474 A written guaranty, signed by J. Perrine, was annexed to Woodcock’s order for the goods, as follows :
“ The undersigned hereby consider, and make themselves responsible for the foregoing order of drugs, medicines and garden seeds, and hereby bind themselves, their heirs, executors and administrators, that if said goods are not paid for within six months from their shipment, by the aforesaid John H. Woodcock, then and in that case they will well and .truly pay, or cause to be paid, the total amount of said purchases, in lawful money of the United States.
“ J. Perrine.”
The order to which this guaranty was annexed, bore date at Mobile, 10th September, 1841. Thus far no term of credit was expressly mentioned in the papers, except the desire to procure the garden seeds at four to six months, mentioned in Woodcock’s order for the goods.
On the 15th September, 1841, Woodcock forwarded an instrument, of which the following is a copy, to the plaintiffs’ firm:
“ State of Alabama, )

“Mobile County. )

“Whereas, Dr. John H. Woodcock of county and state aforesaid, did, on the 10th day of September, 1841, address an order to Leeds & Thayer of New-York, for the purchase of them, or through them, a bill of drugs, medicines, garden seeds, &c., on six months’ time, the payment of which said order was guaranteed to said Leeds & Thayer by Dr. James Perrine of Mobile, now be it known, that I, W. D. Dunn, of state and county aforesaid, hereby bind myself in law, and consider myself equally responsible with said J. Perrine, in having said amount of order paid at maturity by the aforesaid J. H. Woodcock. In failure whereof, on the part of said Woodcock, I hereby bind myself, my executors, admin *475 istrators and assigns, to save said Leeds & Thayer of New-York harmless in the sale of the aforesaid bill or bills sold as aforesaid to J. H. Woodcock. In testimony whereof, I hereby affix my hand and seal, this 15th day of September, A. D., 1841.
“ Wm. D. Dunn (Seal).”
The recitals in this instrument shows, and with entire precision, the contract into which the defendant proposed to enter. It was optional with the plaintiffs’ firm to accept the proposition, and enter into the contract or to refuse it. If they accepted the contract, they could only do so on the terms proposed by the defendant. If they did not comply with the terms so proposed there was no contract made; there was no meeting of minds between the parties. (Walrath v. Thompson, 6 Hill, 540.) The contract proposed by the defendant was to guaranty the payment of a debt to be contracted by a third person, upon certain terms. The compliance with those terms formed the only consideration of the defendant’s contract. The plaintiffs’ firm did not comply with the terms, for they sold a part of the goods ordered on a credit of four instead of six months. The consequence was that no contract was made between the plaintiffs’ firm and the defendant. The defendant, by his guaranty, did not offer to the plaintiffs’ firm to become responsible for the payment of the goods to be sold Woodcock upon a credit of four and of six months, but for the goods to be sold all on a credit of six months. The guaranty offered was entire and went to the whole order. If accepted it must be accepted as offered. It was not, therefore, in contemplation of law, accepted. No contract was made.
I have taken it as clear that the garden seeds were sold upon a credit of four months. The plaintiff’s counsel insist, however, that “ the court below erred in deciding as a matter of fact that it plainly appeared that the seeds were sold on a credit of four months.” The letter accompanying *476 the invoice, and written by Vermilye the book-keeper of the plaintiffs’ firm, says to Woodcock in relation to the seeds “ we think we can get four months on them, at all events you shall have that time on them,” then followed the bill of the seeds, and at the bottom of it “ 4 mo.,” and the like entry was made in like manner in the invoice book. The only evidence to countervail this unequivocal written evidence, is that of Vermilye, who says, he had no instructions from Leeds & Thayer as to the term of credit at the time of writing the word and figure “ 4 mos.,” at the foot of the bill. On his cross-examination he said he meant to say he did not recollect having any such instructions. If it were necessary for the defendant to prove affirmatively that the entries upon the invoice made and forwarded by the plaintiffs’ firm, by their book-keeper, were made upon the express instructions of the principals, the want of recollection of this witness might cause a failure of the requisite evidence, affirmatively to establish the fact. But in this case the letter and invoice were produced by the defendant, under a notice to produce served on him by the plaintiffs, and by the plaintiffs read in evidence to establish the sale and delivery of the goods referred to in the guaranty. It became necéssary for the plaintiff to show that there was a mistake on the subject of credit, if such a mistake existed. The defendant had a right to rest upon this evidence until it was shown to be erroneous, which was neither done nor attempted. There was no conflict of evidence upon the point. The evidence on this point was all on one side, and so conclusive that there could be no doubt if it had been given by the defendant. Being given by the plaintiff cannot make it less so as against him.
I think the judgment of the superior court ought to be affirmed.
Jewett, J.
The principle that there must be a strict compliance with the terms of a guaranty or the surety will not be bound, is too well settled to be controverted at this *477 day. Where the surety proposes a particular credit to be given his principal, that must be given; and it is not enough that the creditor waits until the proposed time of credit has expired before he calls for payment. He must agree to wait, so that he cannot sue in the meantime. (Walrath v. Thompson, 6 Hill, 540; S. C., 2 Comstock, 185; Smith v. Dam, 6 Hill, 543; Wright v. Johnson, 8 Wend., 512; Dobbin v. Bradley, 17 Wend., 422.)
Woodcock, on the 10th of September, 1841, made his order on Leeds & Thayer, particularly specifying the various kinds and quantity of each kind of drugs, medicines, garden seeds, &c., which he wished to purchase of them or procure them to supply him, and forwarded it to Leeds & Thayer, with a guaranty of Perrine annexed ; on the 15th day of the same month, the defendant, after reciting that fact substantially, and that credit for the amount was asked for the term of six months from the time of shipment of the goods, and that the payment of the order was guaranteed to Leeds & Thayer by Dr. James Perrine of Mobile, thereby bound himself and agreed to be responsible, with Perrine, that the order of Woodcock should be paid by him at its maturity, that is at the expiration of six months’ credit from the time of the shipment to be given by Leeds & Thayer to Woodcock. The first question to be determined is, whether the plaintiff’ gave evidence enough to entitle him to have it submitted to the jury whether such credit was agreed to be given by Leeds & Thayer to Woodcock on their furnishing him the goods ordered. If there had been no other evidence in respect to giving the credit proposed, than that Leeds & Thayer received the order and contract of guaranty; furnished and forwarded the goods, and did not call for payment until the expiration of the six months from the time o’f shipment, the ground for presuming that they agreed to give the proposed credit would no doubt be sufficient. The guaranty by the defendant to pay for the goods specified in the order was indivisible and could not be apportioned by *478 Leeds & Thayer at their option. They could not furnish Woodcock with the drugs at a credit of six months and the garden seeds at a credit of four months and hold the defendant liable upon his guaranty for the payment of either portion. It was a precedent condition to his liability that Leeds & Thayer should furnish all the goods, which they did supply Woodcock with to fill the order, at the credit proposed, in order to bind the defendant under his contract. They could not furnish any part of the goods ordered, to Woodcock, upon a longer or shorter term of credit and hold the defendant liable to pay for them or any part of them under his guaranty without his assent to such altered terms. The evidence, however, in this case, rebuts the presumption that would arise from facts to which I have adverted, that Leeds & Thayer agreed to give six months’ credit. The proof was that the goods were shipped at five different periods, in as many parcels: namely, on the 9th of October, 1841, the 1st, 20th and 30th of November and the 24th of December, in the same year. The invoice of garden seeds of the 30th of October shows on its face that these were furnished at a credit of four months, and besides the proof shows that on the 9th day of March, 1842, about five months from the time of the first shipment and within about two and a half months from the last, Leeds & Thayer drew on Woodcock, generally, on account of their goods, for $650, at seven days’ sight, thus showing that they did not intend giving the credit of six months for any portion of the goods furnished by them.
I think the nonsuit was properly granted and that the judgment should be affirmed.
All the judges concurring,
Judgment affirmed.